UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(609) 989-2040

CHAMBERS OF
**TONIANNE J. BONGIOVANNI**
UNITED STATES MAGISTRATE JUDGE

U.S. COURTHOUSE
402 E. STATE STREET, RM 6052
TRENTON, NJ 08608

October 9, 2012

**LETTER ORDER**

RECEIVED
OCT -9 2012
AT 8:30_____M
WILLIAM T. WALSH, CLERK

Re:   Slutsky, et al. v. Guadagno, et al.
      Civil Action No. 10-5331 (PGS)

Dear Counsel:

At issue in this matter is the appointment of counsel for Plaintiff(s?). FED. R. CIV. P. 17(c)(2) requires the Court to "appoint a guardian *ad litem* - or issue another appropriate order - to protect a minor or incompetent person who is unrepresented in an action." Recently, the United States Court of Appeals for the Third Circuit decided *Powell v. Symons*, 680 F.3d 301 (3d Cir. 2012) which addressed the requirements outlined in FED. R. CIV. P. 17(c)(2). Attached is a copy of the *Powell* opinion. In short, *Powell* held that "[w]hen confronted with verifiable evidence from a mental health professional of an unrepresented litigant's incompetence, the District Court has an obligation, pursuant to Rule 17, to inquire into the litigant's competency. *Id.* at 310.

Following the guidance of *Powell,* the parties are instructed to endeavor to determine if the appointment of counsel is appropriate for Plaintiff in this matter. This Court requests the parties' submissions be filed by **October 31, 2012.**

IT IS SO ORDERED.

*[signature]*

**TONIANNE J. BONGIOVANNI**
**United States Magistrate Judge**

680 F.3d 301, *; 2012 U.S. App. LEXIS 6467, **;
82 Fed. R. Serv. 3d (Callaghan) 266





Positive
As of: Oct 09, 2012

KEVIN POWELL, Appellant v. DR. SYMONS; DETLEF F. HARTMANN, Appellant v. WARDEN THOMAS CARROLL; COMMISSIONER STANLEY TAYLOR; JANE BRADY, Former Attorney General; ADULT BUREAU CHIEF PAUL HOWARD; JAMES WELSH; WARDEN ROBERT SNYDER; ELIZABETH BURRIS; DEPUTY WARDEN DAVID PIERCE; FRANCENE KOBUS; MIKE LITTLE; EDWARD JOHNSON; JOHN MELBOURNE; JANE THOMPSON; LISA M. MERSON; R. VARGAS; EVELYN STEVENSON; NIKITA ROBBINS; JANET LEBAN; MICHAEL KNIGHT; JOHN MALANEY; JANE ALIE; DEBORAH RODWELLER; GAIL ELLER; OSHENKA GORDON; BRENDA HEDDINGER; NANCY DOE; R.W. DOE, IV; LARRY LINTON; KIMBERLY WEIGNER; DR. ANTHONY CANNULI; J. DOE(s) TO LXIII; JOYCE TALLEY; CARL HAZZARD; CAP. J. HENRY; MICHAEL McCREANOR; JOHN SCRANTON; IHUOMA CHUCKS

No. 10-2157, No. 10-3069

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

680 F.3d 301; 2012 U.S. App. LEXIS 6467; 82 Fed. R. Serv. 3d (Callaghan) 266

October 24, 2011, Argued
March 30, 2012, Filed

**SUBSEQUENT HISTORY:** Request denied by, Motion denied by, Sub nomine at *Hartmann v. Carroll*, 2012 U.S. Dist. LEXIS 112025 (D. Del., Aug. 8, 2012)

**PRIOR HISTORY:** [**1]
On Appeal from the United States District Court for the Middle District of Pennsylvania. (D.C. No. 4-07-cv-02225). District Judge: Honorable James F. McClure. (Reassigned to Chief Judge: Honorable Yvette Kane).

On Appeal from the United States District Court for the District of Delaware. (D.C. No. 1-06-cv-00340). District Judge: Honorable Sue L. Robinson.
*Hartmann v. Carroll*, 719 F. Supp. 2d 366, 2010 U.S. Dist. LEXIS 140717 (D. Del., 2010)
*Powell v. Symons*, 2010 U.S. Dist. LEXIS 47151 (M.D. Pa., Apr. 12, 2010)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff state prisoners, proceeding pro se, sued defendants, prison officials, seeking damages. Both plaintiffs sought appointed counsel. The United States District Courts for the Middle District of Pennsylvania and the District of Delaware denied the motions. Plaintiffs appealed. The appeals were consolidated.

**OVERVIEW:** The question was whether the district courts erred in failing to sua sponte inquire whether plaintiffs were incompetent under *Fed. R. Civ. P. 17(c)(2)* or in declining to appoint counsel or a representative for them. Inter alia, the appellate court held that under the Ferrelli test, the court could not assume competence in the face of evidence to the contrary. The appellate court held that, when confronted with verifiable evidence from a mental health professional of an unrepresented litigant's incompetence, a district court had an obligation, under *Rule 17*, to inquire into the litigant's competency. Under this rule, the psychiatric report in one case was so thorough as to

680 F.3d 301, *; 2012 U.S. App. LEXIS 6467, **;
82 Fed. R. Serv. 3d (Callaghan) 266

plaintiff's incapacity in his criminal case that it was an abuse of discretion not to appoint a representative. A psychiatrist's letter put the court on notice that the other plaintiff also was possibly incompetent. But the evidence was not so strong that the appellate court could conclude that he should have been found so. Instead, the court held only that the district court abused its discretion in failing to at least consider the possible application of *Rule 17(c)* and remanded for reconsideration.

**OUTCOME:** The appellate court reversed and remanded the cases to their respective district courts.

**LexisNexis(R) Headnotes**

***Civil Procedure > Parties > Capacity of Parties > Representatives***
[HN1] See *Fed. R. Civ. P. 17(c)(2).*

***Civil Procedure > Parties > Capacity of Parties > Representatives***
[HN2] Although the language of *Fed. R. Civ. P. 17* makes the obligation mandatory, there is no suggestion which factors should trigger the district court's duty of inquiry as to whether the individual at issue is incompetent. As a result, responsibility for *Rule 17* appears generally to be left to the discretion of the district courts.

***Civil Procedure > Parties > Capacity of Parties > General Overview***
***Civil Procedure > Parties > Capacity of Parties > Guardians***
***Civil Procedure > Summary Judgment > Appellate Review > Standards of Review***
***Civil Procedure > Appeals > Standards of Review > Abuse of Discretion***
***Civil Procedure > Appeals > Standards of Review > De Novo Review***
[HN3] An appellate court reviews for abuse of discretion both a district court's decision to appoint a guardian ad litem under *Fed. R. Civ. P. 17(c)* as well as its decision to deny counsel to an indigent civil litigant. An appellate court exercises plenary review of a district court's grant of summary judgment, and apply the same standard as the district court.

***Civil Procedure > Parties > Self-Representation > Pleading Standards***
***Civil Procedure > Appeals > Reviewability > Notice of Appeal***
[HN4] Notices of appeal, especially those filed pro se, are liberally construed, and the appellate court can exercise jurisdiction over orders not specified in a notice of appeal if (1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues.

***Civil Procedure > Appeals > Reviewability > Preservation for Review***
[HN5] Normally, a party who fails to object before the district court to a magistrate judge's ruling on a nondispositive pretrial matter waives that objection on appeal.

***Civil Procedure > Parties > Capacity of Parties > Guardians***
***Civil Procedure > Counsel > Appointments***
[HN6] Federal courts encounter the issue of appointment of counsel more frequently in civil cases under *28 U.S.C.S. § 1915(e)*, but only rarely consider the issue of appointment of a guardian ad litem under *Fed. R. Civ. P. 17(c).*

***Civil Procedure > Parties > Capacity of Parties > General Overview***
[HN7] It is the federal district court's obligation to issue an appropriate order to protect a minor or incompetent person who is unrepresented in an action. *Fed. R. Civ. P. 17(c)(2).* The United States Court of Appeals for the Fifth Circuit has yet to set forth the factors that warrant sua sponte inquiry into a litigant's capacity to sue or be sued under *Fed. R. Civ. P. 17(c)* and the Rule itself does not offer any commentary. A district court need not inquire sua sponte into a pro se plaintiff's mental competence based on a litigant's bizarre behavior alone, even if such behavior may suggest mental incapacity. That is an important limiting factor as to the application of *Rule 17*. The federal courts are flooded with pro se litigants with fanciful notions of their rights and deprivations.

***Civil Procedure > Parties > Capacity of Parties > General Overview***
[HN8] An appellate court cannot expect district judges to do any more than undertake a duty of inquiry as to whether there may be a viable basis to invoke *Fed. R. Civ. P. 17.* That duty of inquiry involves a determination of whether there is verifiable evidence of incompetence. In the context of unrepresented litigants proceeding in forma pauperis, this inquiry would usually occur after the preliminary merits screening under *28 U.S.C.S. § 1915A* or *28 U.S.C.S. § 1915(e)(2).*

*Civil Procedure > Parties > Capacity of Parties > General Overview*
[HN9] A district court would likely abuse its discretion if it failed to consider whether *Fed. R. Civ. P. 17(c)* applied if a court were presented with evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court received verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent. The United States Court of Appeals for the Fifth Circuit agrees with the United States Court of Appeals for the Fourth Circuit that bizarre behavior alone is insufficient to trigger a mandatory inquiry into a litigant's competency but if there has been a legal adjudication of incompetence and that is brought to the court's attention, the Rule's provision is brought into play. The Ferrelli Court was mindful of the need to protect the rights of the mentally incompetent, but at the same time in light of the volume of pro se filings in the United States Court of Appeals for the Second Circuit, it could not disregard the potential burden on court administration associated with conducting frequent inquiries into pro se litigants' mental competency. It follows that the district court must satisfy its duty of inquiry before it proceeds to determine if *Rule 17* applies.

*Civil Procedure > Parties > Capacity of Parties > General Overview*
*Civil Procedure > Parties > Prisoners > Screening of Petitions*
[HN10] A court is not required to conduct a sua sponte determination whether an unrepresented litigant is incompetent unless there is some verifiable evidence of incompetence. However, once the duty of inquiry is satisfied, a court may not weigh the merits of claims beyond the *28 U.S.C.S. § 1915A* or *28 U.S.C.S. § 1915(e)(2)* screening if applicable.

*Civil Procedure > Parties > Capacity of Parties > General Overview*
*Civil Procedure > Parties > Prisoners > General Overview*
*Civil Procedure > Counsel > Appointments*
[HN11] *28 U.S.C.S. § 1915(e)* gives district courts broad discretion to request an attorney to represent an indigent civil litigant.

*Civil Procedure > Parties > Prisoners > Screening of Petitions*
*Civil Procedure > Counsel > Appointments*

[HN12] After considering the merits of a plaintiff's claim as a threshold matter, a district court should consider additional factors that bear on the need for appointed counsel including: (1) plaintiff's ability to present his case; (2) the difficulty of the legal issues; (3) the degree to which factual investigation will be necessary and plaintiff's ability to pursue investigation; (4) plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which the case will turn on credibility determinations; and (6) whether the case will require testimony from an expert witness.

*Civil Procedure > Parties > Capacity of Parties > General Overview*
[HN13] Under Pennsylvania law, once a person is adjudicated incompetent, s/he is deemed incompetent for all purposes until, by court order, the status of incompetency is lifted. *20 Pa. Cons. Stat. Ann. § 5517* and *Pa. R. Civ. P. 2051*.

*Civil Procedure > Parties > Capacity of Parties > General Overview*
[HN14] Pennsylvania defines an "incapacitated person" as an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that the person is partially or totally unable to manage financial resources or to meet the essential requirements for physical health and safety. *Pa. R. Civ. P. 2051*.

*Civil Procedure > Parties > Capacity of Parties > General Overview*
[HN15] Under ordinary circumstances, a determination as to whether *Fed. R. Civ. P. 17* applies is to be made in the first instance by the trial court.

*Civil Procedure > Parties > Capacity of Parties > General Overview*
[HN16] Under the Ferrelli test the United States Court of Appeals for the Third Circuit has adopted, a court may not assume a litigant's competence in the face of evidence to the contrary.

*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > Dismissals*
[HN17] Where a plaintiff fails without good cause to effect service on a defendant within 120 days of the filing of a complaint, a district court does not abuse its discretion by dismissing the action against that defendant without prejudice. *Fed. R. Civ. P. 4(m)*.

*Civil Procedure > Parties > Capacity of Parties > General Overview*
[HN18] When confronted with verifiable evidence from a mental health professional of an unrepresented litigant's incompetence, the district court has an obligation, pursuant to *Fed. R. Civ. P. 17*, to inquire into the litigant's competency.

*Civil Procedure > Parties > Capacity of Parties > Guardians*
*Civil Procedure > Parties > Prisoners > General Overview*
*Civil Procedure > Counsel > Appointments*
[HN19] If an inmate plaintiff is determined to be incompetent and remains unrepresented, *Fed. R. Civ. P. 17(c)* requires that a guardian be appointed or some other remedial step taken.

*Civil Procedure > Parties > Capacity of Parties > General Overview*
[HN20] In Tabron, an appellate court repudiated the special circumstances requirement.

**COUNSEL:** Kevin Powell, LaBelle, PA, Pro se Appellant in No. 10-2157.

Kathryn M. Kenyon (Argued), James W. Kraus, Pietragallo, Gordon, Alfano, Bosick & Raspanti, Pittsburgh, PA, Attorneys for Appellee in No. 10-2157.

Detlef F. Hartmann, Georgetown, DE, Pro se Appellant in No. 10-3069.

Catherine C. Damavandi(Argued), Department of Justice, Wilmington, DE; James E. Drnec (Argued), Balick & Balick, Wilmington, DE, Attorneys for Appellees in No. 10-3069.

Karen C. Daly (Argued), Stephen J. McConnell, Dechert, Philadelphia, PA, Attorneys for Amicus Curiae.

**JUDGES:** Before: SLOVITER, GREENAWAY, JR., Circuit Judges and POLLAK,* District Judge.

> * Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

**OPINION BY:** SLOVITER

**OPINION**

[*303] OPINION OF THE COURT

SLOVITER, *Circuit Judge*.

Rule 17(c)(2) of the Federal Rules of Civil Procedure [**2] provides that:

> [HN1] A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. *The court must appoint a guardian ad litem -- or issue another appropriate order -- to protect a minor or incompetent person who is unrepresented in an action.*

(emphasis supplied).

The Advisory Committee Notes do not elaborate on the requirement of the emphasized language above and there is but a paucity of reported decisions interpreting the provision. [HN2] Although the language of the Rule makes the obligation mandatory, *see Berrios v. N.Y. City Hous. Auth., 564 F.3d 130, 134-35 (2d Cir. 2009)*, there is no suggestion which factors should trigger the district court's duty of inquiry as to whether the individual at issue is incompetent. As a result, responsibility for *Rule 17* appears generally to be left to the discretion of the district courts.

This consolidated appeal arises from two cases in which prisoners, proceeding pro se, sought damages from prison officials. The appeal calls on the court to decide whether the District Courts erred in failing to *sua sponte* inquire whether Powell or Hartmann were incompetent under *Federal Rule of Civil Procedure 17(c)(2)* [**3] or in declining to appoint counsel or some representative for them.

[*304] **I.**

Kevin Powell, a Pennsylvania state prisoner proceeding pro se and *in forma pauperis*, filed suit in the Middle District of Pennsylvania in 2007 pursuant to *42 U.S.C. § 1983* against Dr. John Symons, his treating physician at SCI-Rockview. Powell asserts an *Eighth Amendment* claim that Dr. Symons was deliberately indifferent to his medical needs. The District Court denied Dr. Symons' motion to dismiss for failure to state a claim. Dr. Symons subsequently filed a motion for summary judgment.

Powell filed a series of motions for extensions of time and for counsel. The Magistrate Judge, exercising his authority to resolve non-dispositive pre-trial motions, granted five of Powell's requests for extensions of time to file a response and denied one request as moot. In the last order extending Powell's time to respond, the Magistrate Judge directed him to respond by February 26, 2010 and informed Powell that no further extensions would be granted. Powell's seventh motion for an extension of time

to respond to Dr. Symons' motion for summary judgment explained that the District Court presiding over his criminal proceeding had ordered [**4] him to a psychiatric facility for four months and he was there without his personal property. The Magistrate Judge denied the motion and reminded Powell that no further extensions would be granted. Powell never filed a response to the motion for summary judgment.

Powell's ten motions for counsel cited his rudimentary education and his difficulties obtaining legal assistance while in prison. The Magistrate Judge denied each of Powell's motions for counsel. In so doing, the Magistrate Judge wrote that he assumed Powell's claim to have potential merit and that several of the relevant factors, including Powell's education level and the need for expert testimony, weighed in favor of appointing counsel. Although the Magistrate Judge stated that he preferred to appoint counsel, he denied counsel primarily on the ground that, in his experience, it is difficult to find counsel willing to represent prisoners in civil rights cases.

At about the same time as Powell's civil proceeding, he was charged in a criminal proceeding in the Middle District of Pennsylvania for issuing threats against the President and mailing threatening communications in violation of *18 U.S.C. §§ 871* and *876(c)*, [**5] respectively.[1] Powell, who was represented in the criminal case by appointed counsel, pleaded guilty to those charges in January 2009. However, prior to sentencing, the District Court appointed a psychiatrist, Dr. Stefan Kruszewski, to examine Powell and prepare a written report of his findings.

> 1   He subsequently explained that he sent those threats so he would be transferred to federal prison.

Dr. Kruszewski, a graduate of Harvard Medical School, has written and spoken extensively about psychiatric issues. He has had at least 30 years of clinical practice experience in which he treated several thousand patients with a wide variety of psychiatric and neuropsychiatric conditions. He prepared an extensive report for the criminal case, setting forth details of his examination. Dr. Kruszewski concluded that Powell met the accepted diagnosis of delusional disorder, mixed subtypes, a diagnosis based on Powell's "repeated pattern of physical complaints without medical findings to support them, the somatic elements of his reported 'torture' and his simultaneously persistent [*305] and episodic refusal of medication." S.A. at 42. The report continued, "[r]egardless of the cause of his symptoms and the [**6] origins of his delusional disorder, some of his conduct is beyond his willful control. That is the nature of an isolated psychotic system of relatively fixed delusional beliefs." *Id.*

Dr. Kruszewski wrote that Powell's "potential to act out violently against others, including those he named in his letters, is small," in part because he has "somewhat limited cognitive abilities." S.A. at 42. Dr. Kruszewski further noted that "there is a great deal of doubt that he had the capacity to form the criminal intent to harm because he has a persistent serious mental illness that chronically alters his reality and his ability to conduct himself within the confines of the law," and that "we can expect his delusional symptoms to wax and wane." *Id.* Notwithstanding this diagnosis, Dr. Kruszewski also found that "[a]lthough his testable fund of information was limited in certain ways . . . , Mr. Powell was able to satisfy my concern that he was able to understand the legal processes and cooperate with them to the best of his ability." S.A. at 32.

After reading and absorbing Dr. Kruszewski's diagnosis, the District Court acknowledged that Powell "may be suffering from a mental disease or defect that [**7] has rendered him mentally incompetent to the extent that he was previously unable to enter a knowing and voluntary guilty plea." S.A. at 49. However, the Court determined that Dr. Kruszewski's report did not provide the Court with sufficient information regarding Powell's competency when he pleaded guilty and ordered that Powell be committed to federal custody for further psychiatric evaluation.

In October 2009, on the basis of an additional psychiatric evaluation, the Court granted the motion of Powell's defense counsel to withdraw his guilty plea and enter a plea of not guilty to the charges in the indictment. The Court then issued an order finding that Powell "is presently suffering from a mental disease or defect rendering him mentally incompetent to understand the nature and the consequences of the proceedings now against him." S.A. at 52. Subsequently, the U.S. Attorney requested dismissal of the indictment, which the Court granted in July 2010.

Turning to the civil case, the Magistrate Judge, in his last two orders denying counsel, noted the criminal court's rulings and his own concerns about Powell's mental competence. In an order entered August 2009, the Magistrate Judge concluded [**8] that although "[Powell's] mental capacity could affect his ability to present his case in a clear and concise manner, he has thus far been able to preserve his interests by engaging in communication with the court. As evident in the documents that [Powell] has already filed with the court, it is clear that [Powell] is literate and more than capable of communicating effectively." J.A. at 22. In a later order entered in March 2010, the Magistrate Judge acknowledged that since his last order Powell had been adjudicated mentally incompetent in the criminal proceeding. The Magistrate Judge stated that "[t]he fact that [Powell] has been found incompetent, of course,

weighs in favor of appointing counsel." J.A. at 27. He once again denied the motion, however, based on his conclusion that "it is unlikely that counsel could be found to represent [Powell]." J.A. at 28. The Magistrate Judge did not discuss his obligations under *Rule 17 of the Federal Rules of Civil Procedure.*

The same day, the Magistrate Judge issued a report and recommendation noting that Powell had not filed a response to the motion for summary judgment, but he recommended granting it on [*306] the merits because Dr. Symons "presented [**9] evidence that [Powell] received extensive medical care and treatment including examinations, medications, lab tests, chest x-rays and an electrocardiogram." J.A. at 38. The Magistrate Judge noted that Powell "has not presented any evidence that [Dr. Symons] was deliberately indifferent to his medical needs or any evidence that [Dr. Symons'] actions or inactions caused him harm." J.A. at 39. The District Court adopted the recommendation in full. Powell appeals.[2]

> 2   Because Powell asserts a claim under the *Eighth Amendment* and sued under *42 U.S.C. § 1983*, the District Court had jurisdiction under *28 U.S.C. § 1331*. We have jurisdiction over his appeal under *28 U.S.C. § 1291*.

[HN3] We reject Dr. Symons' argument that, because Powell cited the wrong order in his Notice of Appeal, this court is without jurisdiction over Powell's appeal. [HN4] Notices of appeal, especially those filed pro se, are liberally construed, and we can exercise jurisdiction over orders not specified in a notice of appeal if "(1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity [**10] to brief the issues." *Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 184 (3d Cir. 2010)* (quotation marks and citation omitted). Those requirements are met here. In his Notice of Appeal, Powell listed the date of the Magistrate Judge's Report and Recommendation rather than the final order of the District Court. However, those two documents are closely related, as Dr. Symons concedes. Moreover, Powell's intent is clearly to appeal the final order adopting the Report and Recommendation as this is the only means of obtaining relief from the summary judgment decision he challenges. Moreover, Dr. Symons has had a full opportunity to brief all the issues and has not been prejudiced by Powell's error.

We review for abuse of discretion both a district court's decision to appoint a guardian ad litem under *Rule 17(c)* as well as its decision to deny counsel to an indigent civil litigant.[3] See *Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002)* (appointment of counsel); *Gardner ex rel. Gardner v. Parson, 874 F.2d 131, 140 (3d Cir. 1989) (Rule 17(c))*. We exercise plenary review of a district court's grant of summary judgment, and apply the same standard as the district court. See *Tri-M Group, LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011)*; [**11] *Fed. R. Civ. P. 56*.

> 3   Powell did not object to the Magistrate Judge's orders denying his motions for counsel, as required by *Middle District of Pennsylvania Rule 72.2*. [HN5] "Normally, a party who fails to object before the district court to a magistrate judge's ruling on a non-dispositive pretrial matter waives that objection on appeal." *Tabron v. Grace, 6 F.3d 147, 153-54 n.2 (3d Cir. 1993)*. However, in light of Powell's pro se status and the fact that the Magistrate Judge's orders did not notify Powell that he risked waiving his appellate rights by failing to object, this court has discretion to reach the issue. See *Leyva v. Williams, 504 F.3d 357, 364-65 (3d Cir. 2007)*; *Tabron, 6 F.3d at 153 n.2*.

**II.**

This court consolidated the appeals filed by Powell and Detlef Hartmann (whose appeal raises similar issues of the obligation of district courts under Federal *Rule 17(c)*) and appointed amicus counsel to address the following: (1) whether, in light of *Federal Rule of Civil Procedure 17(c)*, the District Courts should have *sua sponte* questioned the competence of Powell and Hartmann; (2) if so, what actions the Courts should have taken in that regard; and (3) whether the District Courts abused their [**12] discretion in denying the motions for appointment of counsel.[4]

> 4   [HN6] We express our appreciation to counsel for amici Karen Daly and Stephen McConnell and their law firm, Dechert LLP, for undertaking this responsibility. It is in the best tradition of the Philadelphia bar.

Federal courts encounter the issue of appointment of counsel more frequently in [*307] civil cases under *28 U.S.C. § 1915(e)*, but only rarely consider the issue of appointment of a guardian ad litem under *Rule 17(c)*.

As noted at the outset of the opinion, [HN7] it is the federal district court's obligation to issue an appropriate order "to protect a minor or incompetent person who is unrepresented in an action." *Fed. R. Civ. P. 17(c)(2)*. This court has yet to set forth the factors that warrant *sua sponte* inquiry into a litigant's capacity to sue or be sued under *Rule 17(c)* and the Rule itself does not offer any

commentary. However, the Second Circuit has set forth a well-reasoned standard that has been adopted elsewhere and that we adopt under the circumstances here. In *Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 201 (2d Cir. 2003), that Court concluded that a district court need not inquire *sua sponte* into a pro se plaintiff's [\*\*13] mental competence based on a litigant's bizarre behavior alone, even if such behavior may suggest mental incapacity. That is an important limiting factor as to the application of *Rule 17*. The federal courts are flooded with pro se litigants with fanciful notions of their rights and deprivations. [HN8] We cannot expect district judges to do any more than undertake a duty of inquiry as to whether there may be a viable basis to invoke *Rule 17*. That duty of inquiry involves a determination of whether there is verifiable evidence of incompetence. In the context of unrepresented litigants proceeding *in forma pauperis*, this inquiry would usually occur after the preliminary merits screening under *28 U.S.C. § 1915A* or *28 U.S.C. § 1915(e)(2)*.

With regard to the question of whether there is verifiable evidence of incompetence, [HN9] the *Ferrelli* Court concluded that a district court would likely abuse its discretion if it failed to consider whether *Rule 17(c)* applied "[i]f a court were presented with evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court received verifiable evidence from a mental health professional [\*\*14] demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." *Id*. We also agree with the Fourth Circuit in *Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir. 1986), that bizarre behavior alone is insufficient to trigger a mandatory inquiry into a litigant's competency but "if there has been a legal adjudication of incompetence and that is brought to the court's attention, the Rule's provision is brought into play." The *Ferrelli* Court noted that it was "mindful of the need to protect the rights of the mentally incompetent," but at the same time "in light of the volume of pro se filings in [the Second] Circuit," it could not "disregard the potential burden on court administration associated with conducting frequent inquiries into pro se litigants' mental competency." *323 F.3d at 201*. We share the same concern. It follows that the district court must satisfy its duty of inquiry before it proceeds to determine if *Rule 17* applies.

[HN10] A court is not required to conduct a *sua sponte* determination whether an unrepresented litigant is incompetent unless there is some verifiable evidence of incompetence. However, once the [\*\*15] duty of inquiry is satisfied, a court may not weigh the merits of claims beyond the *§ 1915A* or *§ 1915(e)(2)* screening if applicable. *Cf. Berrios v. N.Y. City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) (citing *Gardner*, 874 F.2d at 141) ("Because [the plaintiff, a severely mentally retarded teenager] was without a representative when the court dismissed her claims, and was otherwise unprotected, the court was without authority to reach the merits of those claims."); [\*308] *cf. also Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 94 n.15 (1st Cir. 2010) (citing *Adelman ex rel. Adelman v. Graves*, 747 F.2d 986, 989 (5th Cir. 1984), for the proposition that "the district court improperly dismissed the case without first determining whether the incompetent's interests were adequately represented").[5]

> 5   In a not dissimilar context, this court has previously had occasion to consider the standard for appointment of counsel under [HN11] *28 U.S.C. § 1915(e)*, a statute that "gives district courts broad discretion to request an attorney to represent an indigent civil litigant." *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). In *Tabron*, we held that, [HN12] after considering the merits of a plaintiff's claim as a threshold [\*\*16] matter, a district court should consider additional factors that bear on the need for appointed counsel including: (1) plaintiff's ability to present his case; (2) the difficulty of the legal issues; (3) the degree to which factual investigation will be necessary and plaintiff's ability to pursue investigation; (4) plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which the case will turn on credibility determinations; and (6) whether the case will require testimony from an expert witness. *Id. at 155-57*; *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002). Powell's complaint easily met the threshold issue of the merits of the putative claim because the District Court denied defendant's motion to dismiss, acknowledging that Powell's claim had sufficient merit to proceed. Nonetheless, the District Court denied Powell's request for counsel noting the scarcity of attorneys willing to take prisoner civil rights cases *pro bono*. We recognized that problem in *Tabron*, but we declined to make that issue determinative of appointment of counsel, *6 F.3d at 157*, and we decline to do so here as well.

### A. Kevin Powell

It appears that the District Court in Powell's case failed [\*\*17] to consider whether *Rule 17(c)* applied, an issue raised first by this court rather than by anyone on Powell's behalf, or by the defendant. Most important, Powell had been adjudicated incompetent in the simultaneous criminal proceeding, and the Magistrate Judge was on notice of that adjudication. [HN13] Under Pennsylvania law, the applicable law of Powell's domicile, *see Fed. R. Civ. P. 17(b)(1)*, once a person is adjudicated incompetent, s/he is deemed incompetent

"for all purposes until, by court order, the status of incompetency is lifted." *Syno v. Syno, 406 Pa. Super. 218, 594 A.2d 307, 310 (Pa. Super. Ct. 1991)* (citing *20 Pa. Cons. Stat. Ann. § 5517* and *Pa. R. Civ. P. 2051*).[6]

> 6  [HN14] Pennsylvania defines an "incapacitated person" as "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that the person is partially or totally unable to manage financial resources or to meet the essential requirements for physical health and safety." *Pa. R. Civ. P. 2051*.

[HN15] Under ordinary circumstances, a determination as to whether *Rule 17* applies is to be made in the first instance by the trial court. Here, however, the psychiatric report is [**18] so thorough as to Powell's incapacity for purposes of the criminal case and the Court's finding of incapacity so amply supported in the record, that we conclude that it was an abuse of discretion not to enter an order appointing an appropriate representative. There is nothing to show that the Magistrate Judge sought counsel, made inquiry of the bar associations, or inquired as to whether law schools that may have clinical programs or senior centers with social workers would be willing to undertake the necessary representation.

It appears that in Powell's case it may not be difficult to undertake this task. Dr. Symons' brief suggests that there is ample evidence that Powell's condition was seriously considered, but [HN16] under the test we adopt from *Ferrelli*, we may not assume his competence in the face of evidence to the contrary. Therefore, we will reverse and remand with directions to the District [*309] Court to appoint a representative or counsel to proceed with the case.

**B. Detlef Hartmann**

In 2006, while incarcerated at the James T. Vaughn Correctional Center ("Vaughn"), Detlef Hartmann filed a pro se suit under *42 U.S.C. § 1983* in the District of Delaware against the warden and members of the [**19] prison medical staff, among others.[7] Hartmann was granted leave to proceed *in forma pauperis*.

> 7  Hartmann was released from custody in January 2009.

Hartmann's initial complaint listed twenty defendants and made a variety of claims concerning the circumstances of his incarceration, including the denial of medical services and inadequate access to legal materials. After screening under *28 U.S.C. §§ 1915* and *1915A* and a series of amendments to the complaint, the District Court permitted Hartmann to proceed with his claims against Ihuoma Chuks, an employee of Correctional Medical Services, Inc., the contractor responsible for healthcare at Vaughn; Thomas Carroll, then warden of Vaughn; and David Pierce, then deputy warden of Vaughn. Hartmann alleged that Chuks, Carroll, and Pierce were deliberately indifferent to his medical needs. Specifically, Hartmann claimed that he was denied treatment for throat pain and thyroid disease and that, although he was referred to an endocrinologist, prison officials never transported him to one. Hartmann's other claims and other named defendants were dismissed for various reasons, including failure to serve, and are not the subject of this appeal.

Defendants [**20] Carroll and Pierce filed a motion to dismiss for insufficiency of process, which was denied by the District Court. Carroll subsequently served a set of interrogatories on Hartmann. Hartmann's response to those interrogatories, while somewhat discursive, demonstrated an impressive ability to organize his points, make rational arguments, and cite supporting legal authority.

During the course of this litigation, Hartmann also filed eight motions seeking appointment of counsel. Those motions listed a variety of reasons why counsel was necessary, including Hartmann's limited access to legal materials and unspecified "mental disabilities." J.A. at 217, 246. Attached to his final request for counsel, Hartmann filed a one-paragraph letter from Dr. Jeanette Zaimes, a psychiatrist, that states:

> To Whom It May Concern: Mr. Detlef Hartmann is under my care for Major Depression and Attention Deficit Disorder. I do not feel he is competent at this time to represent himself in court. I would recommend that he be given a public defender, if at all possible.

J.A. at 389. There is no other medical evidence of Hartmann's mental health in the record.

The District Court denied each of Hartmann's requests for [**21] counsel, repeatedly finding that Hartmann was capable of presenting his own case. In its order denying Hartmann's final request for counsel, the Court acknowledged Dr. Zaimes' letter, but found that "[u]pon consideration of the record, the court is not persuaded that appointment of counsel is warranted at this time. The court has thoroughly reviewed the file and, at every turn, [Hartmann] has ably represented himself. At this juncture of the case, there is no evidence that prejudice will result in the absence of counsel." J.A. at 89. However, the Court denied the motion without prejudice, to be renewed should any of his claims survive summary judgment. As in [*310] Powell's case, the

District Court did not explicitly discuss its *Rule 17* obligations.

Thereafter, in April 2010, Chuks, Carroll, and Pierce moved for summary judgment, which the District Court granted. The Court concluded that the defendants were entitled to summary judgment because there was insufficient evidence that "the defendants had any personal involvement in the alleged constitutional violations." J.A. at 99. In addition, the Court found that the record demonstrated that Hartmann received medical care for his throat and [\*\*22] thyroid conditions and that the evidence could not support a finding of deliberate indifference. In the same order the District Court dismissed, without prejudice, Hartmann's claims against two other defendants for failure to effect service.[8] Hartmann appeals this final order.

> 8   It is not clear whether Hartmann intends to challenge the dismissal of his claims against Paul Howard and Edward Johnson on appeal. However, to the extent that Hartmann challenges that ruling, we will affirm. The District Court waited over two years after Hartmann filed his revised amended complaint before dismissing Hartmann's claims against Howard and Johnson for failure to serve. Hartmann was given an opportunity to state good cause for the delay, but he failed to do so. [HN17] Where a plaintiff fails without good cause to effect service on a defendant within 120 days of the filing of a complaint, a district court does not abuse its discretion by dismissing the action against that defendant without prejudice. *See Fed. R. Civ. P. 4(m)*; *Rance v. Rocksolid Granit USA, Inc., 583 F.3d 1284, 1286-87 (11th Cir. 2009)* (explaining that an incarcerated pro se plaintiff is entitled to rely on service by the U.S. Marshals, but [\*\*23] only after the plaintiff has taken reasonable steps to identify the defendants).

Under the rule we adopt in this case, the letter from Dr. Zaimes sufficed to put the district court on notice that Hartmann was possibly incompetent. [HN18] When confronted with verifiable evidence from a mental health professional of an unrepresented litigant's incompetence, the district court has an obligation, pursuant to *Rule 17*, to inquire into the litigant's competency. But the letter from Dr. Zaimes is hardly overwhelming evidence of incompetency. It amounts to little more than a conclusory statement that Hartmann is incompetent, and it fails to specify what assessments Dr. Zaimes performed to arrive at that conclusion. It is thus quite unlike the careful and detailed analysis provided by Dr. Kruszewski as to Kevin Powell.

Under the circumstances, the evidence of incompetency is not so strong that we may conclude that the district court necessarily should have found Hartmann to be incompetent and should have appointed a guardian or counsel to represent his interests. Instead, we hold only that the district court abused its discretion in failing to at least consider the possible application of *Rule 17(c)*. [\*\*24] We are sensitive to the potential burden imposed by such a holding on the district courts. It might be that some evidence of incompetence (such as, perhaps, Dr. Zaimes's letter) is sufficiently unpersuasive as to be rebutted by other evidence in the record, or by the district court's own experience with an unrepresented litigant, without the need for a full blown hearing. But there ought to have been at least some consideration of the Rule under these circumstances. We shall remand for the district court to determine, in its discretion, whether Hartmann is competent within the meaning of *Rule 17(c)*, as well as the degree and form of process required to answer that question. [HN19] If he is determined to be incompetent and remains unrepresented, *Rule 17(c)* requires that a guardian be appointed or some other remedial step taken.[9]

> 9   In denying Hartmann's motions for appointment of counsel, the District Court stated that appointment of counsel is warranted "only 'upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting from [plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex [\*\*25] but arguably meritorious case.'" J.A. at 88-89 (quoting *Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984))*. We note, however, that [HN20] in *Tabron* this court repudiated the "special circumstances" requirement. *See 6 F.3d at 155*. In light of that fact we will remand for the District Court to reconsider the request for counsel in addition to the *Rule 17(c)* issue.

[\*311] **III.**

The fact that we remand does not suggest that either District Judge erred in the procedure each followed. Each Judge was conscientious in his or her review. We had not previously turned our attention, and therefore theirs, to *Rule 17*. Only after the issue of the propriety of appointing a representative on behalf of each of these plaintiffs is considered can we be satisfied that the process required by *Rule 17* has been satisfied.[10]

> 10   We will respectfully send a copy of this opinion to the chairperson of the Advisory Committee to call to its attention the paucity of comments on *Rule 17*.

100Z4E

\*\*\*\*\*\*\*\*\*\* Print Completed \*\*\*\*\*\*\*\*\*\*

Time of Request: Tuesday, October 09, 2012   15:05:09 EST

Print Number:    2825:374361199
Number of Lines: 491
Number of Pages:

Send To:   Schier, Elyse
           3RD CIRCUIT - PHILADELPHIA
           601 MARKET ST
           PHILADELPHIA, PA 19106-1729