UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2013 APR 23  AM 10 20

Title of Action: **Civil Rights Complaint and Demand for Jury Trial**

**Larry Slutsky - Lead**
**Wendy Slutsky**
**Clayton Slutsky**

   **Plaintiffs (Pro Se),**     Civil Action No. 3:10-CV-05331 (PGS-TJB)

   vs.

**AMENDED COMPLAINT**

**Kim Guadagno** - Former Sheriff, Monmouth County,
       in her individual and official capacity, and Successors.

**William Fraser** - Warden, Monmouth County Correctional Institution,
       in his individual and official capacity, and Successors.

**Monmouth County Sheriff's Office**

**Monmouth County Correctional Institution (MCCI)**

**John and/or Jane Does**

   **Defendants.**

## PARTIES

**Larry Slutsky**
30 Orchard Ave West
Holmdel, New Jersey 07733

**Wendy Slutsky**
30 Orchard Ave West
Holmdel, New Jersey 07733

Clayton Slutsky
30 Orchard Ave West
Holmdel, New Jersey 07733

Kim Guadagno
Former Sheriff, Monmouth County
Office of the Lieutenant Governor
125 West State Street
Trenton, New Jersey 08625

William Fraser
Warden
Monmouth County Correctional Institution
1 Waterworks Road
Freehold, New Jersey 07728

Monmouth County Sheriff's Office
50 East Main Street
Freehold, New Jersey 07728

Monmouth County Correctional Institution
1 Waterworks Road
Freehold, New Jersey 07728

## JURISDICTION

This Court has jurisdiction of this action under 42 U.S.C. 1983.

## CAUSE OF ACTION

Presumed innocent and not having been adjudged guilty of any crime, under an unjust, stigmatizing charge later completely dropped, Clayton Slutsky was subjected to egregious violations of his constitutional civil rights, including official acts and conditions of confinement that amounted to a pattern of wrongful "punishment" at the Monmouth County Correctional Institution (MCCI) over the period of Sunday, October 19, 2008 to Wednesday, October 22, 2008. Clayton should not have been subjected to any punishment, much less cruel and unusual punishment.

Clayton, under the care and supervision of MCCI correction officers and staff, suffered official actions, amounting to torture, including inhumane, cruel, dangerous, degrading treatment and conditions of confinement. The abuse included intentional infliction of pain and severe emotional and mental distress, officially facilitated physical assault, official terroristic threats, being kept in degrading, humiliating, cold nakedness over a prolonged period of days, being confined in severely unsanitary conditions, being subjected to deliberate indifference to his serious medical/mental health needs, well-being and safety, and being subjected to a willful delay in receiving needed medical/mental health screening and treatment at the hospital until bail monies were turned over.

Plaintiffs Larry and Wendy Slutsky, Clayton's parents and caregivers, were wrongfully and unknowingly made parties to the official abuse and mistreatment that was occurring to Clayton at the MCCI during the period they could not pay bail monies, causing them emotional and mental distress. The abuse, punishment and severe conditions of confinement that Clayton suffered continued until they paid. Further, as next of kin, they were arbitrarily never informed or given any information regarding Clayton's serious medical/mental health crisis condition requiring a hospital.

The Plaintiffs sustained injury in fact, including pain, suffering, and emotional and mental distress.

An MCCI bail official, Karen Pierce, called and spoke with Larry Slutsky on Monday, October 20, 2008, strongly urging him to immediately pay the cash-only bail and not to wait any longer, without informing him of Clayton's dire condition. Further, on October 22, 2008, when bail was paid, Larry and Wendy Slutsky received a falsely notated Superior Court "New Jersey Bail Recognizance" document with an altered charge.

Clayton is disabled suffering from neuropsychiatric illness, with, at that time, Undiagnosed Late Stage Lyme Disease affecting the brain (Neuroborreliosis). Having been unfairly, cruelly and unjustly stigmatized by a purposefully overreaching, Hazlet police "luring" charge, later completely dropped, he was subjected to MCCI inflicted inhumane official treatment and punishment, that was neither sanctioned by the Judiciary nor contemplated by law.

The correction officers, supervisors and staff at the MCCI were required to provide for Clayton's care, supervision and safety and should have protected him. They failed to properly and adequately discharge their official duties, including not properly or adequately screening/classifying Clayton upon his arrival at the MCCI. Clayton was subjected to a continuing pattern of official actions toward him that amounted to the infliction of punishment and abuse, including allowing him to be violently assaulted, constituting attempted murder,

by a particular individual inmate, and being traumatized by official terroristic threats. After being driven to wrap a telephone cord around his neck, Clayton was made to remove all his clothing and was kept confined in profound, ongoing nakedness for days, presumably for his supposed safety and well-being. Inhumanely and unreasonably, he languished, totally naked, in the cold, wet cell with filthy, toilet water overflowing onto the floor. Even though he was under official watch, no one reasonably responded to his obviously inhumane, degrading, humiliating circumstances and severely unsanitary conditions of confinement. Further, MCCI corrections officers and staff, including medical staff, were deliberately indifferent to his serious medical/mental health needs.

It would be obvious to any reasonable MCCI correction officer, supervisor, or staff, including medical staff, and by any reasonable standard, that Clayton was suffering inhumane treatment and conditions of confinement. There was callous and wanton official indifference regarding Clayton's care and well-being.

It was only on October 23, 2008 that Larry and Wendy Slutsky had their first contact with Clayton, who was then away from the MCCI and at Monmouth Medical Center, and initially learned of some of the horrific, inhumane treatment and conditions that Clayton suffered at the MCCI. The very next day, on October 24, 2008, they sent a Formal Complaint, via certified mail, to Monmouth County Sheriff Kim Guadagno requesting an investigation and response. Additionally, they forwarded their complaint to State of New Jersey Governor Jon Corzine requesting a state investigation. They have never received any response from any of these government officials, in any manner or degree, regarding their complaint. On March 15, 2010, a follow-up request for a response was sent by Larry Slutsky to Acting Monmouth County Sheriff Shaun Golden. Again, the only official government response they received was silence.

Although Sheriff Kim Guadagno arbitrarily never responded to Larry and Wendy Slutsky, she did have an internal investigation conducted for her by a member of her staff, named Jeffrey Equils, who never spoke with Larry and Wendy Slutsky about their complaint, with results unknown and never provided.

MCCI corrections officers and staff were inadequately supervised and trained. Inhumane treatment, egregious abuse and severely unsanitary conditions were allowed and tolerated at the MCCI under Sheriff Kim Guadagno and Warden William Fraser through their lack of adequate oversight and monitoring. Sheriff's Office and MCCI policies, procedures, regulations, rules, handbooks, etc., were either inadequate, not properly followed and/or completely lacking.

Such serious violations of civil and human rights are shocking to the conscience, as well as egregious departures from reasonable and civilized community standards of decency, justice and fairness.

Specific acts and/or omissions by government officers/officials/entities in committing, allowing, tolerating, and/or facilitating deprivation of civil rights, under the cover, color and authority of law, with injury in fact, include but are not limited to the following:

1. Upon arrival at the MCCI, the correction officers, supervisors and staff, who handled Clayton, did not adequately or properly fulfill their responsibilities. They were indifferent to Clayton's safety and did not provide protection from harm. Rather, they willfully facilitated harm to Clayton. With wanton indifference, they purposefully and recklessly placed Clayton in a cell with a particular individual inmate who was allowed to proceed to commit violence against Clayton, constituting attempted murder. This inmate, under the eyes of MCCI security cameras, violently attacked Clayton and repeatedly attempted to kick him in the head, injuring Clayton, and forcefully shoved Clayton's face into the cell's toilet bowl. The two correction officers there purposefully ignored the attack, even though MCCI security cameras were there. Clayton suffered a head injury - a large bump in the back of his ear. Further, having his face shoved into the toilet bowl dangerously exposed Clayton to infectious disease.

2. Correction officers made terroristic threats to Clayton, including threatening to put him into a cell with the "homosexual" inmates to sexually assault and harm him.

3. Tormented, suffering pain and despair under official abuse and terroristic threats, Clayton wrapped a non-working telephone cord around his neck. Larry and Wendy Slutsky were never informed about the suicide attempt by the MCCI. Only when Clayton was no longer at the MCCI did they first learn, when they were told by the Crisis Unit staff at Monmouth Medical Center's Emergency Room, that there had been a suicide attempt at the MCCI..

4. On October 20, 2008, a call was received from MCCI bail official Karen Pierce. She strongly urged Larry Slutsky to immediately pay Clayton's cash-only bail and not to wait any longer, including not to wait for the Arraignment coming up that afternoon. When told that the cash-only bail imposed couldn't be immediately paid, she urgently said "Do you know what is going on here?", never explaining or telling him about Clayton's dire condition and circumstances.

5. Over the entire period of MCCI custody, Larry and Wendy Slutsky were arbitrarily and unreasonably never informed by anyone, including the Sheriff, the Warden, the MCCI staff, or any other government official in Monmouth County, that Clayton was in serious medical/mental health condition needing a hospital. What was an actual crisis was deliberately kept hidden from his family.

5a. Larry Slutsky and Wendy Slutsky assert a constitutional claim of deprivation of substantive due process, procedural due process and equal protection rights under the Fourteenth Amendment of the U.S. Constitution. The government defendants egregiously failed to follow their mandated, official policy to "ensure notification" of next of kin in the event of medical emergencies. Their policy embodied a right to notification and a duty to notify.

Although warranted by two medical emergencies (very serious illness and attempted suicide) involving Clayton Slutsky at the MCCI, the government defendants ignored their own official policy and never provided the mandated emergency family notification to Larry Slutsky and Wendy Slutsky, Clayton Slutsky's next of kin, during his entire time in their custody from October 19, 2008, to October 22, 2008.

Larry Slutsky and Wendy Slutsky were deprived of the fundamental, substantive right of emergency family notification, as represented in the government defendants official policy, in violation of substantive due process under the Fourteenth Amendment. Further, the government defendants failure to follow the mandated policy was unfair and discriminatory toward Larry Slutsky and Wendy Slutsky, in violation of procedural due process and equal protection under the Fourteenth Amendment.

The government defendants arbitrarily and unreasonably did not follow the mandated, official policy. Further, there did not exist any compelling governmental objective not to have followed the policy.

The official policy is written in the document titled – "Monmouth County Sheriff's Office Department of Corrections Policy and Procedure … SECTION: Standard Operating Procedures … SUBJECT: NOTIFICATION IN EMERGENCIES … CHAPTER: MEDICAL …"

Under "PURPOSE" the official document states: "The purpose of this policy is to establish protocol for medical notifications."

Under "POLICY" the official document states: "It is the policy of the Monmouth County Sheriff's Office Department of Corrections to ensure notification of the next of kin or legal guardian in the event of emergencies, such as a serious injury, illness or death of an inmate. Whenever possible, the permission of the inmate shall be gained, prior to such notification."

A notifying party in the official document is identified as "the health service administrator". Charlene Donovan was the MCCI's Health Services Administrator. She never provided the mandated emergency family notification to Larry Slutsky and Wendy Slutsky at any time, including the time they met with her face to face at the MCCI on October 22nd.

On October 19, 2008, within hours of his arrival at the MCCI, Clayton Slutsky's mental condition deteriorated. Further, it was severely exacerbated when he was purposefully placed with another inmate shortly after his arrival who assaulted him, and there were official terroristic threats were made to him to place him with certain other inmates to harm him. Exhibiting serious mental illness Clayton Slutsky was placed on suicide watch and, shockingly, put by certain corrections officers into a cell containing a telephone cord. Clayton Slutsky attempted suicide. Larry Slutsky and Wendy Slutsky were denied emergency family notification on October 19th.

On October 20th, MCCI bail official Karen Pierce called Larry Slutsky and Wendy Slutsky and strongly urged that they immediately pay the cash only bail, saying nothing about the suicide attempt the night before. Also, on October 20th, MCCI Dr. Wolf ordered that Clayton, with serious mental illness, should be taken to the hospital Crisis Center at Monmouth Medical Center. (The medical emergency transport did not occur immediately. It was deliberately delayed for two days, made dependent on bail monies being turned over.) Larry Slutsky and Wendy Slutsky were denied emergency family notification on October 20th.

On October 21st, Larry Slutsky and Wendy Slutsky called the MCCI and learned that Clayton Slutsky was in the Infirmary. "Bill", at the Infirmary, was spoken to, and refused to provide any information. Larry Slutsky and Wendy Slutsky had Clayton Slutsky's signed <u>State of New Jersey Mental Health Advance Directive</u> faxed to "Bill". In the Advance Directive, Clayton had designated Larry Slutsky and Wendy Slutsky as his mental health care representatives, which was ignored. Larry Slutsky and Wendy Slutsky were denied emergency family notification on October 21st.

On October 22, 2008, Larry Slutsky and Wendy Slutsky met face to face, on site at the MCCI, with Charlene Donovan, Health Services Administrator. She refused to provide any information regarding Clayton Slutsky, blatantly ignoring the mandated, official policy to "ensure" emergency family notification. Larry Slutsky and Wendy Slutsky were left in severe anguish and emotional pain. Larry and Wendy Slutsky were denied emergency family notification on October 22nd.

In a written FORMAL COMPLAINT directly to Sheriff Kim Guadagno, dated October 24, 2008, Larry Slutsky and Wendy Slutsky, iterated to her: "There was a life or death situation going on with Clay and it was being kept secret from his immediate family." Sheriff Guadagno never responded.

The government defendants violated Larry Slutsky and Wendy Slutsky's civil rights under the Fourteenth Amendment to the U.S. Constitution, including substantive due process, procedural due process and equal protection rights.

6. Clayton was placed in a cold, heavily air conditioned, Solitary Cell, with no clothing and no bedding. He was kept in cold nakedness, under official watch, over a prolonged period of days. Being confined in such ongoing circumstances, if even supposedly for his safety and well-being, constituted inhumane, degrading and not medically reasonable treatment. Even a simple paper garment of some kind was not considered nor provided. There was callous, official indifference to the basic human need for covering and adequate warmth.

7. The cold Solitary Cell was severely unsanitary and fetid. The toilet was stuffed up with bodily human wastes overflowing onto the wet floor, necessitating Clayton having to use the sink to perform bodily functions. This severely unhygienic situation was a serious endangerment to health, including further serious exposure to infectious disease. This was an egregious official failure with deliberate, callous indifference for Clayton's health and welfare. Such treatment and conditions were an inhumane and serious deprivation of those minimal, civilized measures necessary to meet basic human needs.

8. That Clayton was suffering inhumane treatment and severely unsanitary conditions of confinement was, or should have been, obvious to any reasonable person. MCCI officers, supervisors and staff, including medical staff, having Clayton under official watch, either knew or should have known of his inhumane suffering and conditions of confinement, yet were callously indifferent, failing to reasonably respond.

9. On October 21, 2008, when Larry and Wendy Slutsky discovered Clayton was in the MCCI "Infirmary", and were denied any further information, they were in anguish. They had Clayton's State of New Jersey Mental Health Advance Directive faxed directly to the Infirmary ("Attn: Bill-Medical Wing"). In the Advance Directive, Clayton had designated Larry and Wendy Slutsky to act as his mental health care representatives, which included their being kept informed and involved in treatment and medication decisions. They could also have provided critical medical/mental health history information, but MCCI medical staff did not want to speak with them.

10. On October 22, 2008, Larry and Wendy Slutsky paid the bail monies under the assumption that Clayton would be released to them. While they waited in the parking area for Clayton to come out, they were shocked to be approached by two correction officers and told that he needed to be taken to a hospital, without further explanation. Although the MCCI had made a medical decision that Clayton needed a hospital, they never informed his family nor took any action to get him to the hospital while the bail monies had remained unpaid.

11. Larry and Wendy Slutsky, with the payment of the bail monies on October 22, 2008, were given a Superior Court "New Jersey Bail Recognizance" document that had been falsely notated with altered charge information - "Criminal Restraint". There was no explanation why the charge information was altered.

12. Upon being told on October 22, 2008, that Clayton would not be released to them and needed a hospital, Larry and Wendy Slutsky, in emotional distress, spoke to the MCCI contract Health Services Administrator (Charlene Donovan). She proceeded to contact the Infirmary physician (Dr. Wolff), who she claimed saw Clayton a day earlier (October 21, 2008) and had made the medical decision Clayton needed a hospital. She also contacted her company lawyer (Jennifer Williams). Ms. Donovan arbitrarily refused to tell Larry and Wendy Slutsky anything about what had happened to Clayton and his medical/mental health condition. Further, she arbitrarily denied their request to see and speak to Clayton, and denied their request to speak to the Infirmary physician. There had been no action taken to get Clayton to the hospital while the bail monies had remained unpaid.

13. The MCCI staff willfully delayed taking Clayton to the hospital until the bail monies had been turned over by Larry and Wendy Slutsky, even though custody arrangements could have been made at the hospital. Clayton was being kept naked, in crisis, in severely unsanitary conditions and denied adequate and timely medical/mental health screening and treatment at the hospital because bail monies remained unpaid. This amounted to MCCI staff, including medical staff, wrongfully making Clayton's receiving necessary medical/mental health care at the hospital contingent upon the payment of the bail monies. This was not in accord with any reasonable standard of medical care, was discriminatory toward a disabled person, and displayed deliberate indifference to Clayton's serious medical/mental health needs. On October 22, 2008, only when and upon the handing over of bail monies by Larry and Wendy Slutsky did MCCI corrections officers and medical staff spring into action to immediately and directly get Clayton to the hospital.

14. The MCCI failed to arrange for appropriate medical transportation, with trained medical personnel, to take Clayton to Monmouth Medical Center, even though bail was paid and the situation was a medical/mental health crisis. Rather, corrections officers took Clayton to the Emergency Room bundled, in chains, in the back of a car. At the hospital, he was made to hobble, as a public spectacle, hands and feet shackled and chained, from the public parking lot through the public lobby of the hospital, in a graphic, humiliating display of official criminalization of mental health illness and disabled discrimination.

15. The Formal Complaint sent by Larry and Wendy Slutsky to Sheriff Kim Guadagno on October 24, 2008, specifically requested that Sheriff Guadagno preserve the video tapes from the MCCI security cameras where Clayton was criminally assaulted. What happened to the video tapes is unknown. Also unknown are the results of the internal investigation she had done by Jeffrey Equils, of her staff, as there never has been any response from her.

16. The Sheriff's Office and MCCI, including managers, supervisors, corrections officers and staff willfully ignored Title 30, New Jersey State Mental Health Statutes, and the Americans with Disabilities Act (ADA).

## DEMAND

Order Trial by Jury.

Order Monetary Damages of $175,000, or as determined by the Court and Jury.

Order Declaratory Judgment that the MCCI staff in Freehold committed inhumane acts and non-judicially sanctioned punishment and should cease and desist.

Order Prospective Injunctive Relief prohibiting inhumane treatment, unsanitary conditions of confinement, and inadequate response to medical/mental health needs at the MCCI in the future.

Order Prospective Injunctive Relief that Clayton be specifically protected and shielded from inhumane and abusive treatment, including torture, by MCCI corrections officers, and others, if there is any future encounter.

Order other appropriate relief as the interests of justice may require.

_[signature]_
Larry Slutsky

AMENDED
_[signature]_

_[signature]_
Wendy Slutsky

_[signature]_

_[signature]_
Clayton Slutsky

_[signature]_