CLERK, U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

2013 JUN 10  PM 12 58

---

LARRY SLUTSKY,
WENDY SLUTSKY,
CLAYTON SLUTSKY

Plaintiffs Pro Se.                    CIVIL ACTION
                                      3:10-CV-05331 (PGS-TJB)

v.

KIM GUADAGNO,
WILLIAM FRASER,
MONMOUTH COUNTY
   SHERIFF'S OFFICE,                  RETURN DATE: JUNE 17, 2013
MONMOUTH COUNTY
   CORRECTIONAL INSTITUTION,
JOHN AND JANE DOES,

Defendants.


Larry Slutsky, Wendy Slutsky
Plaintiffs Pro Se
30 Orchard Ave W.
Holmdel, N.J. 07733

Tel. No. 732-739-4265

---

PLAINTIFFS REPLY TO GOVERNMENT DEFENDANTS OPPOSITION TO APPEAL
OF MAGISTRATE'S PRIVILEGE DECISION.

---

1

Pro Se Plaintiffs Larry Slutsky and Wendy Slutsky submit this REPLY to the Government Defendants Opposition to Appeal of Magistrate's Privilege Decision.

Larry Slutsky and Wendy Slutsky's Appeal, dated May 17, 2013, is being challenged by the Government Defendants in their Opposition Brief as not being timely.

Larry and Wendy Slutsky are not electronic filers, and the mode, for sending and receiving documents to and from the Court, is the U.S. Postal Service.

A copy of Judge Bongiovanni's Letter Order, dated April 30, 2013, finding that the Investigation Report and email with enclosed Sentinel Report are privileged was mailed by the Court to the Plaintiffs, via the U.S. Postal Service, and was received by them on May 3, 2013.

By letter, dated May 6, 2013, the Plaintiffs objected to the Court's decision. By Letter Order, dated May 8, 2013, Judge Bongiovanni informed the Plaintiffs: "By way of this Order, the Court advises Plaintiffs that, pursuant to FED.R.CIV.P 72(a) and L.Civ. R. 72.1(c), they have the right to appeal this Court's decision within fourteen (14) days after being served with a copy of the order."

Therefore, with the Order, dated April 30, 2013, having been

2

received on May 3, 2013 by Larry Slutsky and Wendy Slutsky from the Court, via the U.S. Postal Service, the deadline for an appeal was fourteen days later – May 17, 2013.

Fed.R.Civ. P. 72 (a) provides : "A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to.  The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

Further, L.Civ.R. 72.1(c) provides that "Any party may appeal from a Magistrate Judge's determination of a non-dispositive matter within 14 days after the party has been served with a copy of the Magistrate Judge's order".

Key appeal, time-setting, language in the Federal Rules of Civil Procedure, noted above, reads "within 14 days after being served with a copy" and "within 14 days after the party has been served with a copy".  When the copy of the order is "served" is paramount for starting the clock.

The Court's transmittal sheet mailed to the Plaintiffs with the April 30th Order notes that the order was filed 4/30/13, entered 5/1/13, and clearly states **3:10-cv-05331-PGS-TJB Notice will not be electronically mailed to::**", with the

3

Plaintiffs names listed.  Again, with the Plaintiffs receiving the copy of the April 30th Court Order on May 3, 2013, the last day to appeal was May 17, 2013.

Larry Slutsky and Wendy Slutsky's Appeal was postmarked and sent on May 17, 2013 by certified mail.  It was in hands of and in the control of the U.S. Postal Service, its mode of transmittal, on May 17, 2013.

An electronic filer can transmit up to midnight on a deadline day, via the mode of electronic filing, and have it automatically considered timely.  To allow a double standard would be unfair, unjust and discriminatory to Larry Slutsky and Wendy Slutsky as non-electronic filers.

The Government Defendants cite the case Carling v. Peters, 760 F.Supp. 2d 400 (2011) to assert that April 30, 2013 should be used by the Court as the Plaintiffs receipt date of the Order.  They state: "In Carling, the pro se plaintiff failed to timely object to an order entered by the magistrate judge. Id. at 401.  Even though one of the parties in the case was a pro se plaintiff, the court found that 'Here, the Order was entered into the public record on December 6, 2010. Notice of the Order and access to it were available to the parties through the Court's Electronic Filing system as of that date.  Thus, the

4

deadline for filing objections was December 20, 2010.' Id. at 402."

As non-lawyers looking at this case, it appears to the Plaintiffs that the Court did not identify any of the parties as non-electronic filers.  To the contrary, the Court's statement, as quoted above, supports that the parties were electronic filers:  "Notice of the Order and access to it were available to the parties through the Court's Electronic Filing system".

Additionally, the pro se plaintiff cited by the Government Defendants as having "failed to timely object to the order entered by the magistrate judge" appears to be "Peters", who is a lawyer. Footnote [2] of the case states:  "The Court notes that Peters is proceeding in this litigation pro se.  However, the Court finds that the leniency ordinarily accorded to pro se litigants in such matters should not apply to Peters, who has been a member of the bar of New York for many years and a partner of three prominent New York law firms."

The Government Defendants make the claim that there was a "finding" by Judge Bongiovanni "that 'Fed. R. Civ. P. 26(b)(3)(A) as well as the official information privilege' applied to the documents in question."  Judge Bongiovanni's

5

Order, dated April 30, 2013, did not grant any "official information" privilege, nor was such privilege asserted in the Government Defendants Privilege Log. Judge Bongiovanni's Order, dated April 30, 2013, reads:

"Upon review of same, the Court finds that the documents were prepared in anticipation of litigation and are therefore covered by the work product privilege. As such, the Court finds that Plaintiffs are not entitled to those requested documents. Because this was the only privilege asserted in Defendants' privilege log, the Court declines to reach any of the other asserted privileges and, in light of Its ruling, need not do so."

The Government Defendants claim that: "The Plaintiff's Appeal provides the same legal support as was submitted to the Magistrate and simply reiterates the arguments already considered by the Magistrate in the underlying Motion to Compel." In actuality, there was no "in anticipation of litigation" privilege claim by the Government Defendants at the time the Motion to Compel, dated January 22, 2013, was submitted.

The privilege claims asserted by the Government Defendants, at that time, were "deliberative process" and "self-critical analysis" privilege claims. By letter to the Plaintiffs, dated

6

July 20, 2011, the Government Defendants asserted their privilege claims as follows: "pursuant to the rules of evidence the internal investigation conducted by the Monmouth County Sheriff's Office is protected under the privilege of self-critical analysis and the government's deliberate-process privilege." Significantly, the Government Defendants initially never asserted any "in anticipation of litigation" privilege claim at all.

Larry Slutsky and Wendy Slutsky's Appeal directly addresses the Government Defendants "in anticipation of litigation" claim and provides arguments supporting that the documents involved were produced in the ordinary course of business, besides there being a substantial need for the documents by them to prepare their case.

Judge Bongiovanni did not have the arguments made in the Appeal regarding both the "in anticipation of litigation" privilege claim and the Privilege Log, supporting that the contested documents were produced in the ordinary course of business.

The fact that the Government Defendants did not make any "in anticipation of litigation" privilege claim initially, asserting other, as noted, privilege claims instead, is

compelling evidence in support of the Plaintiffs assertion that the documents were not prepared "in anticipation of litigation".

It is obvious that, if indeed, the documents had been truly prepared "in anticipation of litigation", as the Government Defendants now assert, such a privilege claim would have certainly been initially made, but it was not.

Further, a Government Defendants Privilege Log was not produced until Judge Bongiovanni in the Letter Order, dated April 4, 2013, ordered the Government Defendants to produce one.

The Government Defendants claim, pertaining to contract employee Charlene Donovan's email with enclosed Sentinel Report, that "the privilege log clearly provides, and the Magistrate's *in camera* review of the documents determined, that this e-mail was prepared in anticipation of litigation and as a result of the Plaintiffs attempted suicide." In actuality, the subject email with enclosed Sentinel Report was prepared as a result of Charlene Donovan's "encounter" with Plaintiffs Larry Slutsky and Wendy Slutsky on October 22, 2008, and not as a result of Clayton's attempted suicide after having been placed on suicide watch into a cell with a telephone cord.

Larry Slutsky and Wendy Slutsky in their Appeal note that the MCCI's Correct Care Solutions document "POLICY: Suicide Prevention Program" mentions a use of a "Sentinel Event

8

e-mail" for notifications of suicides or attempted suicides. This is illustrative of the use, routinely, of Sentinel Reports for notifications of significant events, in the ordinary course of business.

In regard to Clayton's suicide attempt, the Plaintiffs have not received in Discovery any Sentinel Report that apparently was supposed to have been generated.

The Government Defendants argue with regard to the documents for which privilege is claimed, that "the information upon which these documents were created has already been provided to the Plaintiffs including but not limited to videos of the booking area during the time Clayton was in booking; video for the constant watch area during the time Clayton was under constant watch; and medical records."

This claim does not make the Investigation Report and the email with enclosed Sentinel Report any less relevant to this case.  The investigation was requested by Larry Slutsky and and Wendy Slutsky in their complaint to Sheriff Guadagno. But for the privilege shield granted, the documents would be discoverable.

Further, with the hundreds of correction officers/staff at the MCCI, the Government Defendants presumption that the

9

Plaintiffs should be able to identify the persons who are shown on the video surveillance tapes, even with the shift logs, is totally unreasonable.  The presumed expertise and institutional and personnel knowledge of MCCI Investigator Jeffrey Equils, who reviewed the video tapes and prepared the Investigation Report, cannot be duplicated, if the scope of his internal investigation was, in actuality, adequately thorough.  The Plaintiffs should be allowed to assess the scope of Investigator Equil's investigation.

The Privilege Log's description of the Investigation Report only lists the video tapes as being reviewed by Investigator Equils, with no mention of the medical records.

It is not in the interest of justice to allow privilege claims that are not truly valid to be used, keeping relevant evidence hidden.

Lastly, we object to certain terms being used toward us by the Government Defendants with a purpose to demean us, such as "lip service" and "self-serving", deflecting from the merits of the case.

CONCLUSION

There being good cause, Larry Slutsky and Wendy Slutsky's Appeal should be granted.

10