UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SLUTSKY, et al., | : | Civil Action No. 10-5331 (PGS) |
| Plaintiffs, | : | |
| v. | : | MEMORANDUM OPINION |
| GUADAGNO, et al., | : | |
| Defendants. | : | |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court is Plaintiffs, Larry, Wendy, and Clayton Slutsky's ("Plaintiffs") motion for leave to amend their Complaint to add as defendants the County of Monmouth and now known individual corrections officers employed at Monmouth County Corrections Institution ("MCCI") during the period of Clayton's pre-trial detention until his release, formerly plead as "John and/or Jane Doe Defendants." These defendants include, Peter Elmer; Shawn Greagori; Daniel Hudak; Eric Kaufman; Thomas O'Brien; Wesley Rebnicky; Richard Rivera; William Francher; David Betten; Sara M. Sturt; Steven Voorhees; Bob Foster; Jesus Andino; Scott Bedle; Gerard Feist; Joseph Marino; Eric Martinez; Tomas Pimental; William Severoni; James Caulfield; Monica Chacon; John Dugan; Robert Pisano; Diana Ramirez; James Robertson; and John Schultz.

Defendants, Kim Guadagno, William Fraser, Monmouth County Sheriff's Office, and Monmouth County Corrections Institution, oppose Plaintiffs' motion. The Court has fully reviewed the papers submitted in support of and in opposition to Plaintiffs' motion, and considers same without oral argument pursuant to Fed. R. Civ.P. 78. For the reasons set forth

1

below, Plaintiffs' motion to amend their Complaint is DENIED.

## I.     Background and Procedural History

Plaintiff, Clayton Slutsky, was detained by MCCI from October 19, 2008 through October 22, 2008. (*See* Complaint; Docket Entry No. 1). On October 13, 2010, then *pro se* Plaintiffs filed suit, listing John and Jane Doe defendants, unknown MCCI corrections officers, in anticipation of determining their identities. (*Id.*). Plaintiffs alleged that Clayton Slutsky suffered misconduct during his period of incarceration at MCCI, which amounted to cruel and inhumane punishment, in violation of his constitutional rights. (*Id.*).

Plaintiffs specifically seek to recover from MCCI and the Monmouth County Sheriff's Office for Clayton Slutsky being subjected to (1) "cruel, dangerous, degrading treatment and conditions of confinement," (2) "intentional infliction of pain and severe emotional and mental distress, officially facilitated by physical assault, official terroristic threats, being kept in degrading, humiliating, cold nakedness over a prolonged period of days, being confined in severely unsanitary conditions, being subjected to deliberate indifference to his serious medical/mental health needs, well-being and safety, and being subjected to a willful delay in receiving needed medical/mental health screening and treatment at the hospital until bail monies were turned over," (3) "violently assaulted, constituting attempted murder, by a particular individual inmate, and being traumatized by official terroristic threats" which "drove him to attempt suicide," (4) "being confined in profound, ongoing nakedness for days in a cold, wet cell with filthy, toilet water overflowing onto the floor." (*Id.*).

On, September 22, 2011 Defendants disclosed to Plaintiffs, MCCI's Shift Detail records for the time during which Clayton Slutsky was detained: October 19, 2008 through October 21, 2008. (*See* Certification of Counsel, Exhibit No. 1; Docket Entry No. 98). The Shift Detail

Record listed each officer working at MCCI, for each shift and location of assignment during the period of Clayton Slutsky's detention.  Defendants therefore contend that Plaintiffs were made aware of the corrections officers on the Shift Detail Record provided in September 2011, yet they failed to amend their complaint to incorporate those defendants at that time. (*Id*.).  Defendants further contend that Plaintiffs' awareness of the identity of the individuals is evidenced by the Platintiffs' marking and circling names on the Shift Detail Record given to them by Defendants. (*Id*.).

On April 23, 2013, Plaintiffs filed their first Motion to Amend and Proposed Amended Complaint. (*See* Motion to Amend; Docket Entry No. 40). Plaintiffs, Larry and Wendy Slutsky (Clayton's parents), amended the Complaint, setting forth a claim based upon MCCI's policy to contact relatives in a case of emergency. (*Id*.). This new claim was based on corrections officers' alleged failure to abide by MCCI policy to give notice to Clayton's parents in case of an emergency. (*Id*.).  Moreover, the Amended Complaint named the same Defendants as in the original Complaint, similarly adding John and/or Jane Doe Defendants.   On August 14, 2013, Defendants answered Plaintiffs' Amended Complaint. (*See* Answer: Docket Entry No. 60).

On May 19, 2014, Plaintiffs retained attorney, Jonathan R. Miller, Esq. (*See* Notice of Appearance: Docket Entry No. 87). During a telephone conference held on May 16, 2014, the Court outlined the conditions for Mr. Miller's representation of Plaintiffs. (*See* May 16, 2014 Transcript Re: Retention of Attorney). The Court confirmed that Mr. Miller was "willing to come into the case to take over for the Plaintiffs and proceed to trial" and that he required time to get up to speed. (*Id*. at 6:12-16).  Mr. Miller confirmed that he wished to represent the Plaintiffs and further stated that he needed a stay of all proceedings for six weeks and a three-month window for discovery, since neither depositions nor interrogatories had been taken. (*Id* at 8:8-

11). The Court noted that "[n]ormally at this, the eleventh hour, if counsel comes in…it would be really unfair to have the case reopened as if it was brand new case…when we've already spent, as you've noted, three and a half years." (*Id* at 8-9:21-2). The Court therefore cautioned Mr. Miller: "I don't want you to view it that if we agree to give you time to conduct some discovery that it would be revisiting or reopening." (*Id*. at 9:10-12). Mr. Miller later responded stating; "I fully appreciate that in getting into this case, I'd be getting in it, you know, at the late stage of it. It wouldn't be to start this case from scratch." (*Id*. at 12:10-12). Thereafter, a stay was executed and a new trial date was set for December 15, 2014. (*See* Stipulation and Consent Order; Docket Entry No. 88).

Plaintiffs now seek to amend their Complaint a second time through this motion. (*See* Motion to Amend: Docket Entry No. 95). Plaintiffs seek to amend their complaint to name the County of Monmouth and the various corrections officers listed above, in place of John and/or Jane Doe Defendants. Plaintiffs argue that from the start of the lawsuit, they have asserted claims against unknown, John and/or Jane Doe Defendants, in anticipation of uncovering the identities of all individuals directly implicated in Clayton Slutsky's mistreatment at MCCI. (*Id*.). Plaintiffs demanded from the Defendants, surveillance videotapes identifying the officers who were on duty while Clayton Slutsky was in the Containment Cell, as well as, the Solitary Cell for the days in which he was detained at MCCI. (*Id*.). However, Plaintiffs further assert Defendants did not comply with these demands until August 1, 2014, nearly 4 years after filing suit. (*Id*.). On August 1, 2014, Defendants identified for Plaintiffs, the MCCI corrections officers appearing in the surveillance videotapes. (*Id*.). Now with the identities of the officers, Plaintiffs seek to amend their Complaint a second time to incorporate said officers into the Complaint.

Plaintiffs argue they should be allowed to amend their Complaint pursuant to Fed. R. Civ.

P. 15(a)(2), which takes a liberal approach to pleading. Plaintiffs state; "[l]leave to amend must generally be granted unless equitable considerations render it otherwise unjust," *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). Such equitable considerations consist of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010). Plaintiffs contend equitable considerations weigh in favor of granting their leave to amend because the proposed amendment is neither futile nor unduly prejudicial.

In arguing that equitable considerations weigh in their favor, Plaintiffs assert that nothing in the present motion nor procedural history of this lawsuit, suggests undue delay by Plaintiffs. Rather, since the beginning of this lawsuit, Plaintiffs have explicitly listed "John and/or Jane Doe" Defendants and diligently attempted to uncover their identities. (*See* Motion to Amend: Docket Entry No. 95). Plaintiffs further state nothing in the proposed Amended Complaint suggests bad faith. Plaintiffs are not advancing any new legal claims nor any new legal theories. They are merely seeking to explicitly name as defendants, those individuals directly implicated in the treatment and conditions of Clayton Slutsky's incarceration at MCCI. (*Id.*).

Furthermore, Plaintiffs state; "an amendment is futile if it is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990)(internal quotation marks and citations omitted). In assessing futility, the Court applies the same standard of legal sufficiency as applied under Rule 12(b)(6). *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Moreover, Plaintiffs state; "prejudice will be considered undue when it rises to such a level that the non-moving party would be unfairly

disadvantage or deprived of the opportunity to present facts or evidence." *Harrison*, 13 F.R.D. at 468.

In arguing the Amended Complaint is neither futile nor unduly prejudicial, Plaintiffs contend that they are not raising new claims but merely identifying the now known "John and/or Jane Doe" Defendants. Because the claims asserted remain those that survived Defendants' prior motion practice, Plaintiffs argue that these claims are not futile. (*See* Motion to Amend; Docket Entry No. 95). Moreover, Plaintiffs assert the proposed Amended Complaint will not unduly prejudice Defendants because there are no newly asserted claims and no newly alleged factual allegations. Defendants are not unduly prejudiced because the information and names of the corrections officers are not new to Defendants, they are only new to Plaintiffs. Therefore, Plaintiffs' argue Defendants could have reasonably expected said corrections officers to be brought into this litigation.

Lastly, Plaintiffs argue the proposed amendment relates back to the original complaint, therefore, the amendment is not time-barred. Under Rule 15(c), an amended pleading "relates back" to the date of the original pleading, for limitation purposes, when:

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. Fed. R. Civ. P. 15(c)

Plaintiffs further state that New Jersey law permits an amended complaint to relate back "if the defendant's true name is unknown at the time the complaint is filed." (*See* Amended Complaint: Docket Entry No. 95)(citing N.J. Rule 4:26-4). Plaintiffs contend that at the time

6

they filed suit, they did not know the identities of the persons directly implicated in Clayton Slutsky's treatment and conditions of incarceration at MCCI, but that they properly plead them as fictitious "John and/or Jane Doe' defendants. Furthermore, Plaintiff argues Defendants were on notice of the "John and/or Jane Doe" Defendants.

In arguing Defendants had notice of the John and/or Jane Doe Defendants, Plaintiffs reference two possible methods by which courts may impute notice under Rule 15(c). The first method is the "shared attorney method," which is "based on the notion that when the originally named party and parties sought to be added are represented by the same attorney," the attorney is likely to have communicated to the latter that they may be joined in the action. *Singletary v. Pennsylvania Department of Corrections*, 266 F.3d 186, 196-97 (3d Cir. 2001). The second method of imputed notice is the "identity of interest method," which "means that the parties are so closely related…that the institution of an action against one serves to provide notice of the litigation to the other." (*Id.*).

Here, Plaintiffs argue imputed notice is appropriate because the newly identified Defendants are all current or former MCCI corrections officers, who would be indemnified by MCCI, the Sheriff's Office and/or Monmouth County. Moreover, Plaintiffs contend the unity of interest between these entities and officers is furthered by "extraordinary efforts taken to conceal their identities during the almost four years of litigation. (*See* Motion to Amend: Docket Entry No. 95).

Defendants oppose Plaintiffs' motion. (*See* Brief in Opposition; Docket Entry No. 98). Defendants note that Plaintiffs seek to amend the Complaint by adding the County of Monmouth and the now known officers listed above, almost four years after the Shift Detail records were disclosed. (*Id.*) However, Defendants assert that Plaintiffs fail to satisfy the legal standard for

7

relation back to state claims against the County and the individual officers under Rule 15. Defendants contend that neither 15(c)(1)(C)(i) nor (ii), requiring notice to the named parties, have not been satisfied. (*See* Brief in Opposition; Docket Entry No. 98). Defendants contend Plaintiffs have failed to demonstrate that the newly named parties have received such notice within the 120 day time period under Rule 4(m). Nor have Plaintiffs demonstrated that the newly named party must have known or should have known, that but for plaintiff's mistake concerning the newly named party's identity, the action would have been brought against the newly named party in the first place. (*See* Brief Opposition; Docket Entry No. 98)(citing *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 194 (3d Cir. 2001)).

Plaintiffs failed to establish notice, which can be shown by; (1) the shared attorney method or (2) the identity of interest method. *Singletary* at 196. Therein, the Court recognized that a subordinate corrections officer is not sufficiently high up on the prison's hierarchy to have the same interests of the prison, and therefore, would not be imputed noticed. *Id*. at 199. Similarly, in the case at hand, Defendants argue the newly named corrections officers did not have continued close contact with those Defendants already plead, so to put them on notice. Therefore, the newly plead Defendants ought to be recognized as not receiving proper notice of the pending litigation.

Furthermore, Defendants assert that Plaintiffs failed to state, in the original Complaint, the first Amended Complaint, and the Amended Complaint at hand, with particularity, which corrections officers were purportedly involved in the alleged violations of Plaintiffs' constitutional rights. (*See* Brief in Opposition; Docket Entry No. 98). Moreover, until now, Plaintiffs did not try to amend their Complaint to indemnify said officers, despite knowing their identities. (*Id*.). Defendants point out that Plaintiffs did not even plead "unknown corrections

officers," but rather, they merely plead "John and/or Jane Doe" defendants. Therefore, Defendants argue that because Plaintiffs gave no description as to who the John and/or Jane Doe defendants were, the corrections officers were not properly plead, and not effectively noticed. Furthermore, since they were given no notice, no appearances were made on their behalf.

Defendants further contend that the identifications of the corrections officers were made available to the Plaintiffs on September 22, 2011, when they disclosed MCCI's Shift Detail records for the time period Clayton Slutsky was detained. (*Id*.). Said records list each officer working by the specific location of assignment at MCCI during the period of Clayton Slutsky's detention. (*Id*.). Moreover, Defendants argue Plaintiffs were aware of these designations when the records were disclosed, evidenced by their markings, yet Plaintiffs failed to properly amend their complaint at the appropriate time. (*Id*.).

**II.     Analysis**

**A.     Standard of Review**

According to Fed.R.Civ.P. 15(a), leave to amend the pleadings is generally granted liberally. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). However, the Court may deny a motion to amend where there is "undue delay, bad faith . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*. Nevertheless, where there is an absence of the above factors: undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be granted freely. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. *See Long*, 393 F.3d at 400. Delay alone, however, does not usually justify denying a motion to amend. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate. *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984).

Further, a proposed amendment is appropriately denied where it is futile. An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.,*, 133 F.R.D. 463, 468 (D.N.J. 1990) (Internal quotation marks and citations omitted). In determining whether an amendment is "insufficient on its face," the Court employs the Rule 12(b)(6) motion to dismiss standard. *See Alvin*, 227 F.3d at 121. Under Rule 12(b)(6), a motion to dismiss will be granted if the plaintiff fails to state a claim upon which relief can be granted. The United States Supreme Court set forth the standard for addressing motions to dismiss under Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). According to *Twombly*, "[w]hile a complaint attacked by

a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (citations omitted). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965 (citations omitted).

In determining whether a civil complaint sufficiently states a claim for relief, the Court applies a two-part test. First, the Court must separate the factual and legal elements of a claim. While the Court must accept as true "all of the complaint's well-pleaded facts[,]" the Court "may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1949). Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 129 S.Ct. at 1950). Merely alleging an entitlement to relief is insufficient. Instead, the complaint "has to 'show' such an entitlement with its facts." *Id*. A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 127 S.Ct. at 1955). Moreover, where the complaint contains allegations sounding in fraud or mistake, said allegations must be pled with particularity. Rule 9(b).

**B.     Discussion**

Here, Plaintiffs seek to amend their Complaint for a second time to add as defendants, the County of Monmouth and 26, now known, John and/or Jane Doe Defendants. In their Original

11

Complaint, Plaintiffs listed "John and/or Jane Doe" Defendants in place of unknown corrections officers who allegedly violated Clayton Slutsky's constitutional rights by subjecting him to cruel and inhumane punishment during the time of his detention at MCCI.  Plaintiffs have since determined the identities of these previously plead fictitious Defendants and now seek, through this motion, to supplement their Complaint to specifically plead said corrections officers in their individual capacities.

Defendants' main argument in opposition to Plaintiffs' motion is that the Amended Complaint fails to satisfy the legal standard for relation back to state claims against the County and the individual officers under Rule 15.  Defendants further argue Plaintiffs failed to state, with particularity, which corrections officers were purportedly involved in the alleged violations of Plaintiffs' constitutional rights, making them insufficiently plead.

The Court is inclined to agree with the Defendants. Plaintiffs failed to properly plead "John and/or Jane Doe" Defendants under N.J. Rule 4:26-4, resulting in the failure to properly give notice to said Defendants under Fed. R. Civ. P. 15.  Moreover, Plaintiffs attempt to amend their Complaint is unduly prejudicial towards the non-moving party, Defendants, since the addition of new parties would require the re-opening of discovery and delaying the already set trial date.

The Court first looks at Plaintiffs' failure to properly plead fictitious defendants under New Jersey Rule 4:26-4.  In the original Complaint, the First Amended Complaint, and the proposed Second Amended Complaint, Plaintiffs merely list "John and/or Jane Doe" Defendants in the caption, as place holders for the unknown corrections officers

involved in Clayton Slutsky's mistreatment at MCCI. This pleading falls short of the fictitious name requirements under New Jersey Rule 4:26-4, which reads:

> In any action…if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a **fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification**. N.J. Rule 4:26-4 (emphasis added).

Here, Plaintiffs failed to sufficiently describe the unknown Defendants. Instead of giving the unknown corrections officers fictitious names and adding an appropriate description sufficient for identification, Plaintiffs simply place "John and/or Jane Doe" Defendants in the caption of their Original and Amended Complaints. Nowhere in the body of their Complaints do Plaintiffs reference John or Jane Doe Defendants. They mention the alleged mistreatment caused by corrections officers but fail to make any connection between the John and Jane Doe Defendants pled and the corrections officers. Because the corrections officers were not properly pled under the fictitious name standards of Rule 4:26-4, they were unaware they were subjected to the impending litigation.

Moreover, Defendants have shown, and the Court agrees, that Plaintiffs were aware of the names of said corrections officers when Defendants released MCCI's Shift Detail Records to Plaintiffs on September 22, 2011, but failed to amend their complaint at that time to incorporate the identifications of said officers. Because these officers where known at that time and Plaintiffs failed to indicate the specific officers in their First Amended Complaint, Defendants may have been under the impression said officers were not going to be subjected to this litigation in their individual capacity.

In *Monroe v. City of Hoboken*, No. CIV. A. 11-2556 JLL, 2012 WL 1191177, at 6 (D.N.J. Apr. 10, 2012) Plaintiff proposed to insert the proper names for the "John Doe" defendants. However, therein, Plaintiff originally plead "unknown officers A, B, C and D." There, the Court found Plaintiff's amended complaint merely clarified, but did not alter, the litigation in any substantive way. Moreover, the Court stated "this minor amendment should come as no surprise to defendants… A, B, and C, based on the detailed facts in the original complaint." *Id* at 6.

The Court finds Plaintiffs' amended complaint substantively alters the litigation. Here, Plaintiffs are attempting to substitute 26 individuals for "John and/or Jane Doe" defendants, who were not sufficiently described in any of the previous complaints. As Defendants point out, Plaintiffs were aware of the names of the corrections officers who allegedly mistreated Clayton Slutsky when they received MCCI's Shift Detail Record. The Shift Detail Record was provided to Plaintiffs on September 22, 2011. Unlike the Defendants in *Monroe*, the newly added Defendants here did come as a surprise. Since, Plaintiffs failed to sufficiently describe said Defendants in their Original Complaint and First Amended Complaint, Defendants were unaware Plaintiffs would choose to sue said corrections officers in their individual capacity until some three and a half years after the Original Complaint was filed.

The Court also focuses on the undue prejudice placed upon Defendants by Plaintiffs amending their Complaint a second time. The Court in *Foman* held a motion to amend may be denied when there is undue prejudice to the opposing party by virtue of allowance of the amendment. *Foman* 371 U.S. 178 at 182. Again, to establish prejudice, the non-moving party must make a showing that allowing the amended

14

pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. *See Long*, 393 F.3d at 400.

Here, Plaintiffs are attempting to introduce 26 new Defendants, in place of "John and/or Jane Doe" Defendants, into a case that is already four years in the making. Plaintiffs' attempt to supplement their original Complaint by adding these new defendants has unduly prejudicial effects on the defendants. If the Court were to grant this motion, it would force the parties to expend significant additional resources to conduct discovery and prepare for trial, as well as, significantly delay the resolution of the dispute.

First, the Court recognizes that by adding so many Defendants, especially this late in the game, when the trial date is approaching, discovery would be required to be reopened. This would contribute to numerous depositions, interrogatories, and trial preparation, not previously anticipated. Therefore, reopening discovery would be costly and time consuming. Moreover, the Court, prior to Mr. Miller's appearance, set out certain constraints and/or requirements before admitting Mr. Miller to represent Plaintiffs. Most importantly, the Court specifically instructed Mr. Miller that discovery would not be reopened as if it were a new case. During a telephone conference on held on May 16, 2014, the Court outlined the conditions for Mr. Miller's representation of Plaintiffs. (*See* May 16, 2014 Transcript Re: Retention of Attorney). There, the Court stated; "Normally at this, the eleventh hour, if counsel comes in…it would be really unfair to have the case reopened as if it was brand new case…when we've already spent,

as you've noted, three and a half years." (Id at 8-9:21-2). Furthermore, the Court warned Mr. Miller, stating; "I don't want you to view it that if we agree to give you time to conduct some discovery that it would be revisiting or reopening." (Id. at 9:10-12). This case is four years in the making and cannot afford to delay any longer to conduct more discovery. Mr. Miller definitively stated he would represent the Slutskys knowing he could not reopen discovery. "I fully appreciate that in getting into this case, I'd be getting in it, you know, at the late stage of it. It wouldn't be to start this case from scratch." (Id. at 12:10-12). By amending the Complaint a second time to incorporate 26 new defendants, discovery would be forced to reopen, precisely what the Court was trying to avoid.

Second, the upcoming trial, which had previously been adjourned to allow Mr. Miller to catch up to speed, will have to be adjourned a second time, to accommodate new discovery, as well as to allow the newly plead Defendants to find and retain representation. This would cause the already lengthy, four years, litigation to be extended.

### III.   Conclusion

For the reasons stated above, Plaintiffs' motion seeking leave to file a Second Amended Complaint to incorporate now know John and/or Jane Doe Defendants is DENIED. An appropriate Order follows.

Dated: December 29, 2014

       s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**